*County Council of Wicomico County, Maryland v. Julie Giordano*, No. 2146, September Term 2023. Opinion by Eyler, James R. Filed March 5, 2025.

**CHARTER INTERPRETATION**

This appeal arose from a dispute between Julie Giordano, the County Executive for Wicomico County ("the County Executive"), appellee, and the County Council of Wicomico County ("the Council"), appellant, over the meaning of § 315(A) of the Wicomico County Charter ("the Charter"), governing the confirmation of executive appointments. In the Circuit Court for Wicomico County, the County Executive filed suit seeking declaratory and injunctive relief relative to her contested appointment of a candidate to the position of Assistant Director of Administration and the Council's subsequent vote to reject that candidate and the passage of legislation defunding that position. The County Executive and the Council filed cross-motions for summary judgment. The circuit court granted judgment in favor of the County Executive, ruling that the candidate was properly appointed, confirmed by inaction of the Council under § 315(A), and that the Council was without authority to defund the candidate's position.

**Held**: Under § 315(A) of the Charter, the County Executive must formally name a candidate for any position requiring Council confirmation and request action by the Council on that candidate at a legislative session. Because the County Executive failed to do so with respect to the Assistant Director of Administration, the candidate was not approved by inaction of the Council.

Consequently, the Council acted within its authority when it deleted the budget item for that position until a candidate was formally submitted and approved consistent with the Charter. We thus vacate the grant of declaratory relief in favor of the County Executive, remand for the entry of a new declaratory judgment in favor of the Council, and dissolve the injunction suspending the effect of the bill defunding that position as of the date of the filing of our mandate.

**MOOTNESS**

Appellant argued that the circuit erred in not holding a hearing on post-judgment motions. The circuit court's opinion and declaratory judgment was dated November 15, 2023. Because the circuit court relied upon a superseded version of § 315(A) in its opinion and declaratory judgment, on November 17, 2023, the County Executive filed a motion to revise and did not request a hearing. On November 20, 2023, the Council filed a motion to alter or amend and requested a hearing. On November 23, 2023, the circuit court stayed the declaratory judgment "pending further court proceedings." On December 13, 2023, the circuit court issued a corrected supplemental opinion and declaratory judgment. It denied the County Executive's motion to revise and the Council's motion to alter or amend as "moot."

The Council argued that, in fact, the court granted the County Executive's motion to revise, constituting reversible error because the change in the opinion was not the correction of a clerical error. The Council also argued that the court denied the Council's motion to alter or amend, constituting reversible error because it was done without a hearing.

The County Executive argued that the court's changes were an exercise of the court's revisory power over its nonfinal rulings.

**Held**: The reasonable inference to be drawn from the record is that the changes were not a *sua sponte* exercise of revisory power in the absence of post-judgment motions, as in *Maryland Board of Nursing v. Nechay*, 347 Md. 396, 399 (1997), but rather were in response to either or both of the parties' motions. The motions were not moot. In effect, the court granted the County Executive's motion to revise and denied the Council's motion to alter or amend. Thus, the post-judgment Rules applied.

Rule 2-311(e) provides that a motion to alter or amend under Rule 2-534 may not be granted without a hearing. Even if we regard the court's action as a ruling on the Rule 2-534 motion, the ruling was effectively a denial of that motion. There was no substantive change in the ruling. Thus, no hearing was required.

With respect to the County Executive's motion to revise, no hearing was requested, and thus, none was required. Rule 2-311(f).

Finally, any error in failing to hold a hearing would be harmless because we have decided the issues *de novo*, as a matter of law.

Circuit Court for Wicomico County
Case No.: C-22-CV-23-000298

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2146

September Term, 2023

_____

COUNTY COUNCIL OF WICOMICO
COUNTY, MARYLAND

v.

JULIE GIORDANO

_____

Reed,
Tang,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, James R., J.

_____

Filed: March 5, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a dispute between Julie Giordano, the County Executive for Wicomico County ("the County Executive"), appellee, and the County Council of Wicomico County ("the Council"), appellant, over the meaning of § 315(A) of the Wicomico County Charter ("the Charter"), governing the confirmation of executive appointments. In the Circuit Court for Wicomico County, the County Executive filed suit seeking declaratory and injunctive relief relative to her contested appointment of a candidate to the position of Assistant Director of Administration and the Council's subsequent vote to reject that candidate and the passage of legislation defunding that position. The County Executive and the Council filed cross-motions for summary judgment. The circuit court granted judgment in favor of the County Executive, ruling that the candidate was properly appointed and confirmed by inaction of the Council under § 315(A), and that the Council was without authority to defund the candidate's position.

The circuit court's opinion and declaratory judgment were dated November 15, 2023. Because the circuit court relied upon a superseded version of § 315(A) in its opinion and declaratory judgment, on November 17, 2023, the County Executive filed a motion to revise, and on November 20, 2023, the Council filed a motion to alter or amend. On November 23, 2023, the circuit court stayed the declaratory judgment "pending further court proceedings." On December 13, 2023, the circuit court issued a corrected supplemental opinion and declaratory judgment. It denied the County Executive's motion to revise and the Council's motion to alter or amend as "moot."

The Council appeals, presenting three questions, which we rephrase:

I. Did the circuit court err in determining that the Charter did not require the County Executive to submit the candidate for Assistant Director of Administration at a legislative session of the Council?

II. Did circuit court err by ruling that the Council could not defund the position of Assistant Director of Administration?

III. Did the circuit court err by granting the motion to alter or amend judgment without a hearing?

For the following reasons, we hold that under § 315(A) of the Charter, the County Executive must formally name a candidate for any position requiring Council confirmation and request action by the Council on that candidate at a legislative session. Because the County Executive failed to do so with respect to the Assistant Director of Administration, the candidate was not approved by inaction of the Council. Consequently, the Council acted within its authority when it deleted the budget item for that position until a candidate was formally submitted and approved consistent with the Charter. We thus vacate the grant of declaratory relief in favor of the County Executive, remand for the entry of a new declaratory judgment in favor of the Council and dissolve the injunction suspending the effect of the bill defunding that position as of the date of the filing of our mandate. We also conclude that the circuit court did not err in failing to hold a hearing on the parties' post-judgment motions, and regardless, any error is harmless.

**BACKGROUND**

Ms. Giordano was elected as County Executive in November 2022 and took office on December 6, 2022. Under the Charter, within six months of her taking office, she was required to appoint officers to head executive departments and agencies, including the Director of Administration and the Assistant Director of Administration. *See* Wicomico

2

County Charter (hereinafter "*Charter*"), Art. IV, § 413. These appointments are subject to confirmation by the Council as set out in § 315(A):

> Appointment by the County Executive of the Director of Administration, the Assistant Director of Administration, department heads or the initial appointment of a deputy director of a department in the executive branch of the county government shall be subject to confirmation by the County Council. *If the Council fails to act to confirm or reject any appointment within 45 days of its submission to the County Council, **at its legislative session**, by the County Executive, the appointment shall stand approved.*

*Charter*, Art. III, § 315(A) (emphasis added). A legislative session is defined in the Charter as the twice monthly meetings of the Council that are open to the public.[1] *Charter*, Art. III, §§ 310(A), 311(A). The Council can also sit in "non-legislative sessions at such other times and places as it may determine." *Charter*, Art. III, § 310(B).

On April 4, 2023, Bunky Luffman, Director of Administration, sent a memorandum to Laura Hurley, Council Administrator, with the subject line, "Proposed Agenda Item." The body of the memorandum states: "The County Executive is requesting a closed work session to discuss a personnel matter." Attached to the memorandum was the resume for Matthew Leitzel, the individual the County Executive was planning to appoint as Assistant Director of Administration. Ms. Hurley sent the memorandum, the resume, and a job description for that position to the Council.

The next Council legislative session was held on April 18, 2023. According to the agenda for that day, at the end of the legislative session, the Council went into a closed

---

[1] This definition also is consistent with Article XI-A, § 3 of the Maryland Constitution, which requires charter counties to have legislative bodies (generally county councils but also the Baltimore City Council) and for those legislative bodies to have specific legislative sessions.

3

work session, *i.e.*, a non-legislative session, to discuss: "Personnel Matter – Appointment of an Assistant Director of Administration."

Following that closed session, Ms. Hurley sent an email to Mr. Luffman, copying the County Executive, stating that "the consensus of the County Council was not to move forward with the appointment of [Mr. Leitzel] as Assistant Director of Administration introduced to the Council during the Closed Session."

The next morning, April 19, 2023, the County Executive sent an email with the subject line, "Reconsideration," to the Council members, copying Ms. Hurley and Mr. Luffman. She asked the Council members to "reconsider Matt Leitzel for the Assistant Director of Administration." She stated that she had spoken to the vice president of the Council by telephone the night before, and he had expressed a willingness to reconsider the candidate for the position. The County Executive's email highlighted Mr. Leitzel's relevant experience and closed with the following: "Based on this new information, I am asking for a favorable report for Matt Leitzel to move forward as the Assistant Director of Administration. Thank you for your time and consideration."

The Council did not respond to that email or take any further action.

Sixty-five days later, on June 22, 2023, the County Executive wrote to the Council as follows:

> On April 5, 2023,[2] the Executive Office submitted Matt Leitzel to the Wicomico County Council for confirmation as the Assistant Director of Administration for Wicomico County. The County Council met in **closed session** and sent an email stating "there was not a **consensus** by Council to

---

[2] The memorandum requesting a closed work session to discuss Mr. Leitzel was sent to Ms. Hurley on April 4, 2023.

move forward with Captain Leitzel for the position." By definition, a consensus is not a vote, especially when Council is in closed session. Per legislative guidelines and the Charter, the [C]ouncil failed to confirm or reject the appointment ***in a legislative session within 45 days of the appointment submission date.*** Therefore, his appointment stands approved per the Wicomico County Charter, Section 315 A, (Amended 08.02.2016 by Res. No. 101-2016).

Mr. Leitzel's first day of work will be on June 26, 2023. We look forward to him joining our team.

If you have any questions, please refer them to Paul Wilber, County Attorney[3] for Wicomico County.

(Emphasis in original.)

At the next legislative session, on July 5, 2023, the Council considered a resolution to confirm Mr. Leitzel for the position of Assistant Director of Administration. The resolution failed by a vote of 6-1.

At the same session, Bill No. 2023-11 was introduced. That bill proposed removing funding for the positions of Assistant Director of Administration, Director of Public Works, and Deputy Director of Public Works until such time as an appointee for each position was submitted to the Council by the County Executive and confirmed.

---

[3] An opinion letter addressed to the County Executive and the Council drafted by Mr. Wilber appears in the record extract. In it, Mr. Wilber concludes that the April 4, 2023 letter was the submission of the appointment of Mr. Leitzel to the Council and, consequently, he was confirmed by inaction on May 19, 2023.

The letter is dated June 8, 2023, which is before the County Executive's letter to the Council. On the second page of the letter, however, Mr. Wilber references the June 22, 2023, letter to the Council from the County Executive. We thus presume that this letter is misdated and was drafted at some point after the County Executive's letter was sent.

The following day, the Council sent a letter to Mr. Leitzel, copying the County Executive, Mr. Luffman, and Mr. Wilber. The letter informed Mr. Leitzel that he had been rejected for appointment by a vote of the Council and directed him to "immediately discontinue serving in the unauthorized capacity as Assistant Director of Administration."

At the August 1, 2023 legislative session, the Council passed Bill No. 2023-11. The County Executive vetoed the bill on August 22, 2023. The Council overrode the veto on September 5, 2023. Bill No. 2023-11 would take effect sixty days after the override vote (November 4, 2023). *Charter*, Art. III, § 311(G).

**The Declaratory Judgment Action**

Ten days later, the County Executive filed her complaint in circuit court seeking declaratory and injunctive relief. After reciting the above facts, she alleged that Matthew Leitzel was submitted to the Council for appointment to the position of Assistant Director of Administration on April 4, 2023, when Mr. Luffman requested a closed work session to discuss a personnel matter; that the Council took no action for more than forty-five days; and that Mr. Leitzel was approved by inaction effective May 19, 2023. The complaint asserted that the Council's email of April 18, 2023, informing the County Executive that there was no consensus to move forward with Mr. Leitzel's appointment was not a rejection of the appointment under § 315(A) because it did not occur at a legislative session. In Count I, the County Executive asked the court to declare that Mr. Leitzel "stands approved" in his position and that Bill No. 2023-11 was an improper use of the Council's appropriation powers. In Count II, she asked the court to enjoin enforcement of Bill No. 2023-11 preliminarily and permanently.

6

The Council answered the complaint and moved for summary judgment. It argued that § 315(A) plainly and unambiguously obligated the County Executive to submit her candidate for the positions identified therein, including Assistant Director of Administration, for approval or rejection at a legislative session. Consequently, because she only proposed Mr. Leitzel's name for consideration at a closed work session, the forty-five-day period during which the Council was obligated to act never began. It supported its motion with exhibits demonstrating that the County Executive had generally followed a two-step process for her other appointments: 1) a memorandum from her or Mr. Luffman to Ms. Hurley requesting a closed work session to discuss a personnel matter, and 2) a second memorandum to Ms. Hurley recommending the candidate by name and requesting appointment or confirmation of the candidate. The Council asserted that, though the first step was a "courtesy" to the County Executive, the second step was a prerequisite under § 315(A).

The County Executive opposed the motion and filed a cross-motion for summary judgment. She maintained that § 315(A) was "neither plain nor unambiguous and invites multiple interpretations[,]" necessitating the use of interpretative tools to resolve that ambiguity. Specifically, she urged that § 315(A) must be harmonized with § 303, which gives the Council exclusive control over its legislative agenda, making it illogical to require the County Executive to submit a candidate at a legislative session.

The County Executive also attached exhibits demonstrating the way appointments had been made previously, maintaining that the "submission process has been informal and varied over the last several years[.]" She noted that, prior to 2020, confirmation resolutions

7

were primarily prepared by the Council Administrator and, more recently, by the County Attorney or the Council Administrator. The County Executive highlighted the appointment of Jaclyn Curry to the position of Director of Human Resources in 2020 by expiration of the forty-five-day period under § 315(A). The minutes from a legislative session in January 2022 reflect that, after a resolution to confirm Ms. Curry was introduced, the Council President raised concerns that the County Executive had not formally submitted her name for confirmation and argued that the Council should not act on the resolution until such time as Ms. Curry's name was submitted. Other members questioned whether the Council was legally permitted to vote on a resolution to confirm a candidate if her name had not been submitted. Ultimately, after a lengthy discussion, the resolution was tabled. The County Executive argued that the discussion at the legislative session underscored the ambiguity in § 315(A).

## Opinion and Declaratory Judgment

On November 15, 2023, the circuit court issued an opinion and declaratory judgment granting judgment to the County Executive on both counts of the complaint. The court observed that there was no dispute that, on April 4, 2023, the County Executive expressed interest in appointing Mr. Leitzel to the position of Assistant Director of Administration. The parties did dispute whether the memorandum requesting a closed work session amounted to a submission and a request for Council confirmation of Mr. Leitzel. The court then turned to the language of § 315(A), which it quoted in its entirety from a superseded version of the Charter as follows:

8

A. Director of Administration and department heads. Appointment by the County Executive of the Director of Administration or of the head of a department in the executive branch of the county government shall be subject to confirmation by the County Council. If the Council fails to act to confirm or reject any appointment within forty-five[4] days of its submission to the County Council by the County Executive, the appointment shall stand approved.

The court reasoned that the above language did not establish a "set methodology for how the proposal for confirmation is to occur, only that the proposed appointment 'shall be subject to confirmation by the County Council.'" It followed that "communication through a brief memorandum is facially sufficient to initiate the process."

The court rejected the Council's argument that § 315(A) incorporated Md. Code, Local Gov't § 9-101(b), which prohibits the "governing body of a county" from "adopt[ing] an ordinance, a resolution, a rule, or a regulation at a meeting not open to the public, except in accordance with the Open Meetings Act." It reasoned that

[i]f this were true, then all executive appointments would have to be conducted at public legislative hearings. An analysis of § 315(A), however, does not require such a conclusion. There is no textual requirement that Wicomico County executive branch confirmations must qualify as an ordinance, resolution, rule, or regulation. All that is required according to the plain reading of the Charter is that notice be provided to the Council to initiate any future action.

---

[4] By footnote, the court noted that this period was amended from thirty days to forty-five days by Resolution No. 101-2016. This same resolution added the language "at its legislative session" between "County Council" and "by the County Executive" in the second sentence, but this amendment was not reflected in the language quoted by the court. Also, in 2018, the first sentence was amended to expressly add the Assistant Director of Administration. That amendment was not reflected in the language quoted by the court. These amendments are discussed below.

9

It observed that, although past practice was consistent with a "tradition" of appointing executive branch nominees through a resolution at a public legislative session, there was no set procedural mechanism for initiating the resolutions. The court noted that the process followed for the appointment of Ms. Curry supported the County Executive's position that "the appointment process is not a formal matter requiring all actions to take place in a public legislative forum" and ruled that the text of § 315(A) did not "support the requirement of any formal action except a notice of intent from the County Executive to the Council."

Turning to the Council's authority to pass Bill No. 2023-11 defunding the Assistant Director of Administration position, along with two other vacant positions, until such time as a candidate were submitted and approved by the Council, the circuit court observed that the Council has authority to amend the annual budget to decrease or eliminate a previously approved budgetary expenditure. *Charter*, Art. VII, § 705(F)(1). It concluded that the Council's authority to do so was constrained by § 314(A)(3),[5] however, which bars the

---

[5] § 314(A) states:

A. Generally. Neither the County Council nor any of its members shall:

> 1. Attempt to supervise, direct, administer or interfere with any of the functions or the personnel of the executive branch;
>
> 2. Attempt to influence the head of any department of the county government concerning the appointment of any person to, or his/her removal from, any office or employment; or
>
> 3. In any way take part in the appointment of or removal of any officer or employee of the county except as specifically provided in this Charter.

Council from interfering with the executive branch, including by acting to remove an officer or employee of that branch except as permitted by the Charter. Because the circuit court concluded that Mr. Leitzel properly was approved by inaction of the Council, it followed that the Council could not remove him from that position by using its budgetary powers. The court reasoned that the remainder of Bill No. 2023-11 – which removed funding for two vacant positions – was not in violation of the Charter.

The court declared the following:

1. The April 4, 2023, memorandum was legally sufficient to trigger the forty-five-day window for the Council to act under § 315(A).

2. Matthew Leitzel was confirmed as Assistant Director of Administration because the Council failed to act to reject his appointment within forty-five days after that memorandum was received (May 19, 2023).

3. Matthew Leitzel is entitled "to all of his salary without any interruption that may have been caused by application of Legislative Bill No. 2023-11[.]"

4. The provision of Legislative Bill No. 2023-11 eliminating the "budgetary line allocation for the position of Assistant Director of Administration is stricken and severed and permanently enjoined from enforcement as to the appointment of Matthew Leitzel[.]"

5. The remainder of Legislative Bill No. 2023-11 is lawful and permitted to go into effect.

## Post-Judgment Motions

Two days later, the County Executive moved to revise the opinion and declaratory judgment under Rule 2-535(d),[6] arguing that the court made a clerical mistake by quoting an outdated version of § 315(A).

The Council responded to that motion and filed a motion to alter or amend under Rule 2-534, requesting a hearing. It attached to its motion a copy of Resolution 101-2016, which proposed amending the Charter to lengthen the time in which the Council must act under § 315(A) from thirty days to forty-five days and to add "at its legislative session," along with a copy of the ballot question for the Charter Amendment. It also included a copy of Resolution 65-2018, which proposed modifying § 315(A) to make the Assistant Director of Administration subject to the confirmation requirements. Both Charter amendments were approved by the voters.

## Corrected Supplemental Opinion and Declaratory Judgment

On December 13, 2023, the court issued a corrected supplemental opinion and declaratory judgment. The supplemental opinion was substantively the same as the original opinion except that the court quoted the current version of § 315(A) and reasoned that the inclusion of the phrase "at its legislative session" did not alter its analysis of the law. The court observed that the addition of that language:

> only contemplates how the County Council is to proceed upon receiving a candidate for confirmation. The County Executive is free to forward to the County Council their candidates during a legislative session, a non-

---

[6] That Rule states, in pertinent part: "Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders." Md. Rule 2-535(d).

legislative session, or during any other period. The County Council, however, is bound to respond on the record during a legislative session within forty-five days of receiving their confirmation, no matter the method of proposal.

Because the Council received the "name and intent for confirmation on April 4, 2023[,]" the circuit court concluded that its obligation to act at a legislative session within forty-five days was triggered on that date.

The declaratory judgment was unchanged except that the court declared that the original opinion and judgment were superseded by the revised opinion, "which serves only to clarify the [c]ourt's decision and does not result in any substantive change."

By separate orders, the court denied the motions to revise and to alter or amend as "moot."

This timely appeal followed.

## STANDARD OF REVIEW

"Whether summary judgment was granted properly is a question of law." *Lightolier, A Div. of Genlyte Thomas Grp., LLC v. Hoon*, 387 Md. 539, 551 (2005). "The standard of review is *de novo* and we are concerned with whether the trial court was legally correct." *Id*. (quotation marks and citation omitted). "We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *Haas v. Lockheed Martin Corp*., 396 Md. 469, 479 (2007) (quotation marks and citations omitted).

13

**DISCUSSION**

**I.**

The central issue in this case concerns the construction of § 315(A) of the Charter. Our canons of statutory construction "apply with equal force to the interpretation of a charter provision." *Prince George's Cnty. v. Thurston*, 479 Md. 575, 586 (2022). The Supreme Court of Maryland has explained:

> It is a well-settled principle that the primary objective of statutory interpretation is to ascertain and effectuate the intention of the legislature. The first step in this inquiry is to examine the plain language of the statute, and if the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. Thus, where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent. Furthermore, words may not be added to, or removed from, an unambiguous statute in order to give it a meaning not reflected by the words the Legislature chose to use.

*Montgomery Cnty., Md. v. Fraternal Ord. of Police, Montgomery Cnty. Lodge 35, Inc*., 427 Md. 561, 572-73 (2012) (cleaned up). "Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 640 (2018) (quotation marks and citations omitted).

As a threshold matter, the parties disagree as to whether § 315(A) is ambiguous. The first sentence of that provision is not in dispute. The 2018 amendment established that

14

the Assistant Director of Administration is "subject to confirmation by the County Council."[7] The second sentence is our focus. It states:

> If the Council fails to act to confirm or reject any appointment within 45 days of its submission to the County Council, at its legislative session, by the County Executive, the appointment shall stand approved.

The parties focus upon the placement of the phrase "at its legislative session[.]" In the Council's view, that phrase modifies "submission" and requires the County Executive to submit an appointment for consideration by the Council at a legislative session. The County Executive contends that the placement of this phrase is ambiguous but that by reference to other interpretive tools, the ambiguity must be resolved in favor of her position that the Council must act to reject or confirm the appointment at a legislative session, not that the County Executive must submit it for consideration at a legislative session.

The circuit court construed the provision consistent with the County Executive's position, reasoning that the phrase "at its legislative session," which was added to § 315(A) in 2016, imposes a duty upon the County Council to act on a submission at a legislative session and does not dictate the way the County Executive may submit a candidate for approval.

We begin with the plain language of § 315(A). The second sentence contains a conditional clause – "If the Council fails to act to confirm or reject any appointment within 45 days of its submission to the County Council, at its legislative session, by the County

---

[7] The circuit court's first opinion and declaratory judgment assumed that § 315(A) applied to that position even though the version quoted in that opinion did not include the 2018 language.

15

Executive," – and a main clause – "the appointment shall stand approved." Both clauses use the term "appointment." "When statutory terms are undefined, we often look to dictionary definitions as a starting point, to identify the 'ordinary and popular meaning' of the terms[.]" *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024) (quoting *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 390 (2022)). Merriam-Webster defines the word "appoint" to mean "to name officially[.]" *Appoint*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/appoint (last visited Jan. 15, 2025); *see also Appoint*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/appoint (last visited Jan. 17, 2025) ("[T]o choose someone officially for a job or responsibility[.]"); *Appoint*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To choose or designate (someone) for a position or job, esp. in government."). We conclude that the term "appointment" refers to a person officially named by the County Executive for a particular position.

We now turn to the placement of the phrase "at its legislative session" within § 315(A). If, as the circuit court ruled, that phrase governed the manner in which the Council must act to confirm or reject an appointment, it naturally would appear after "confirm or reject any appointment," as follows: "If the Council fails to act to confirm or reject any appointment, **at its legislative session,** within 45 days of its submission to the County Council[ ] by the County Executive, the appointment shall stand approved." (Bolded emphasis reflects added language; brackets reflect deleted language.) Instead, it appears after "submission to the County Council[.]" By placing the new language here, the

16

phrase governs the manner of *the submission* of the appointment, not the way the Council may act upon it.

We thus construe § 315(A) to unambiguously require the County Executive to formally submit the name of a candidate for a particular position to the Council for consideration at a legislative session. This construction ensures that the Council is on notice when the forty-five-day window in which it must act opens. The necessity of establishing this date is readily apparent here, where the County Executive requested a closed work session in a memorandum on April 4, 2023, but that session did not occur until fourteen days later. Under the County Executive's construction of § 315(A), the Council had just thirty-one days left to act after it informally vetted Mr. Leitzel and found his qualifications lacking. *See FC-Gen Operations*, 482 Md. at 380 ("In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." (quotation marks and citations omitted)).

The legislative history of § 315(A) confirms our construction. Prior to the 2016 amendments, the second sentence of § 315(A) read: "If the Council fails to act to confirm or reject any appointment within 30 days of its submission to the County Council by the County Executive, the appointment shall stand approved." In 2016, the Council approved a resolution to amend § 315(A) to extend the time in which it had to act by fifteen days and added "at its legislative session" between the phrases "submission to the County Council" and "by the County Executive." Consistent with § 1002(B) of the Charter and Art. XI-A,

17

§ 5 of the Maryland Constitution, that proposed Charter Amendment appeared on the ballot for approval by the voters as Question C,[8] which stated:

> To amend the County Charter to extend the time for the Council to act to confirm or reject any appointment by the County Executive of the Director of Administration, the head of a department in the executive branch, or a member of a board or commission from 30 days to 45 days from submission *and to require submission at a legislative session of Council.*

The language of the ballot question is consistent with our plain language construction because it specifies that the phrase "at its legislative session" clarifies the manner of the submission of an executive appointment, not the manner the Council must act upon a submission.

The County Executive argues that this construction of § 315(A) would allow the Council to refuse to place a candidate's name on the legislative agenda and "prohibit the County Executive from ever making an appointment." We disagree. Though the Council alone is empowered to set its legislative agenda, *Charter*, Art. III, § 303, the Council may not interfere with any of the "functions . . . of the executive branch[.]" *Charter*, Art. III, § 314(A)(1). One such function that is specifically enumerated in the Charter is the appointment power. *Charter*, Art. IV, § 413. It follows that if the County Executive formally submits a name for appointment to an executive office, the Council must act on that appointment under § 315(A) by placing the candidate on the agenda for a vote or the candidate would be confirmed by inaction. In other words, the date of a formal request for action on a candidate starts the clock under § 315(A).

---

[8] The County Attorney drafted the ballot question.

18

Given our construction of § 315(A), it is clear that the April 4, 2023 memorandum requesting a closed work session to discuss a personnel matter fell short. First, the memorandum did not name Mr. Leitzel or identify the position the County Executive sought to fill. Second, the memorandum did not request action by the Council to confirm a candidate at a legislative session, but rather requested a private discussion at a non-legislative session.[9] For both reasons, the April 4, 2023 memorandum was not the submission of an appointment to the Council for action at a legislative session and did not start the running of the forty-five-day period in which the Council was required to act.[10]

---

[9] Though not necessary to our analysis, the history of past practices by the current County Executive and prior County Executives that was supplied by both parties on summary judgment demonstrates that formal submission of a candidate's name and a request for action was the routine procedure followed. The language varied, but the memoranda in the record reflect requests for "confirmation" of a candidate by the Council, "recommend[ing] the appointment" of a candidate, and "request[ing] the appointment" of a candidate. All of these methods are adequate to submit an appointment to the Council under § 315(A).

Additionally, the unique circumstances of the appointment of Ms. Curry do not support the County Executive's position. In that instance, the Council introduced a resolution to confirm a candidate despite the lack of an appointment memorandum. Having acted at a legislative session to approve or reject that candidate, the Council effectively waived the requirement of an appointment memorandum for that candidate. By then tabling the resolution, the Council failed to act on the appointment within forty-five days. Here, there was no resolution introduced until after the County Executive advised the Council that Mr. Leitzel had been confirmed by inaction *and* the resolution was put to a vote and failed.

[10] For the same reasons, the County Executive's follow-up email requesting reconsideration of the consensus following the closed work session could not amount to a formal submission of Mr. Leitzel as a candidate. In any event, the County Executive never argued before the circuit court that the April 19, 2023 follow-up email triggered the forty-five-day clock.

19

Consequently, Mr. Leitzel was not confirmed to the position of Assistant Director of Administration by the Council's inaction.

## II.

We now turn to the circuit court's ruling that the Council was not empowered to defund the position of Assistant Director of Administration by its passage of Bill No. 2023-11. It reasoned that § 705(F)(1) of the Charter[11] empowered the Council to amend the budget to delete previously approved budgetary expenditures. Bill No. 2023-11 deleted the budget allocations for three positions – Assistant Director of Administration, Director of Public Works, and Deputy Director of Public Works – all of which the County Executive must fill within six months of taking office, until such time as a candidate were submitted and approved. The court concluded that the County Council was within its authority to delete the budget allocations for Director of Public Works and Deputy Director of Public Works because both positions were vacant. It was without authority, however, to delete the

---

[11] That provision states:

> After the public [budget] hearing, the Council may decrease or delete any items in the budget except those required by the laws of this state or of this county, and except any provisions for debt service on obligations then outstanding or for estimated cash deficits. The Council shall have no power to change the form of the budget as submitted by the County Executive, or to alter the revenue estimates except to correct mathematical errors, or to add any items to the budget or to increase any expenditure recommended by the County Executive for current expense or capital purposes. In the event the Council decreases or deletes any item(s) and the Executive and Council do not agree upon the expenditure of the surplus, then upon adoption of the budget the surplus shall be placed in the undesignated fund balance for future appropriation.

budget allocation for the Assistant Director of Administration because Mr. Leitzel had been confirmed for that position.

The court declared that the provision of Bill No. 2023-11 defunding the Assistant Director of Administration position was "stricken and severed and permanently enjoined from enforcement as to the appointment of Matthew Leitzel" but that the remainder of the bill, defunding two vacant positions, was lawful and could go into effect. The County Executive did not appeal from the circuit court ruling that the Council was empowered to defund the two vacant positions. As a consequence of the trial court's ruling, Mr. Leitzel continued working as Assistant Director of Administration during the pendency of this appeal.

Because we have held that Mr. Leitzel was not confirmed to the position of Assistant Director of Administration, that position remained vacant when the Council enacted Bill No. 2023-11. Thus, the court erred by enjoining the Council's implementation of Bill No. 2023-11 with respect to the Assistant Director of Administration vacancy. Effective the date of our mandate, the circuit court's order enjoining that section of Bill No. 2023-11 is dissolved and the section may take effect.[12]

**III.**

The County Executive filed a motion to revise pursuant to Rule 2-535(d) in which it requested the court to revise its opinion to quote the then current version of § 315(A). It did not challenge the court's reasoning or its conclusion. The County Executive did not

---

[12] We note that the Council did not file a counterclaim or otherwise raise any issue of disgorgement of salary and benefits received by Mr. Leitzel.

request a hearing. The Council filed a motion to alter or amend in which it referenced the inaccurate quote but also argued that the court's conclusion was not consistent with the Charter. The Council requested a hearing.

In its brief on appeal, as a question presented, the Council asks whether the circuit court erred in granting the motion to alter or amend without a hearing. The argument does not track the question, however. In its argument, after asserting that the post-judgment motions were not moot, it argues that, in fact, the court granted the County Executive's motion to revise, constituting reversible error because the change in the opinion was not the correction of a clerical error. The Council also argues that the court denied the Council's motion to alter or amend, constituting reversible error because it was done without a hearing.

The circuit court ruled that both motions were moot. The County Executive argues that changes then made were an exercise of the court's revisory power over its nonfinal rulings. The reasonable inference to be drawn from the record, however, is that the changes were not a *sua sponte* exercise of revisory power in the absence of post-judgment motions, as in *Maryland Board of Nursing v. Nechay*, 347 Md. 396 (1997), but rather were in response to either or both of the parties' motions. The motions were not moot. In effect, the court granted the County Executive's motion to revise and denied the Council's motion to alter or amend. Thus, the post-judgment Rules apply.

Rule 2-311(e) provides that a motion to alter or amend under Rule 2-534 may not be <u>granted</u> without a hearing. Even if we regard the court's action as a ruling on the Rule

2-534 motion, the ruling was effectively a denial of that motion. There was no substantive change in the ruling. Thus, no hearing was required.

With respect to the County Executive's motion to revise, no hearing was requested, and thus, none was required. Rule 2-311(f).

Finally, any error in failing to hold a hearing would be harmless because we have decided the issues *de novo*, as a matter of law.

## CONCLUSION

For these reasons, we vacate the declaratory judgment and remand for the entry of a new declaratory judgment declaring that 1) the April 4, 2023 memorandum was not legally sufficient to initiate the forty-five-day appointment window pursuant to § 315(A); 2) that Mr. Leitzel was not confirmed as Assistant Director of Administration by the Council's inaction; 3) that Mr. Leitzel, who has been serving as Assistant Director of Administration since June 26, 2023, is entitled to his salary until the effective date of our mandate; 4) that the provision of Legislative Bill No. 2023-11 providing for the elimination of the budgetary line allocation for the position of Assistant Director of Administration was lawful and will take effect when our mandate issues.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY VACATED. CASE REMANDED FOR THE ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

The correction notice(s) for this opinion(s) can be found here:

https://www.mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/2146s23cn.pdf